UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SCHWABE NORTH AMERICA, INC.,

    Plaintiff,

v.      Case No. 14-CV-235

CAL-INDIA FOODS INTERNATIONAL,
INC. d/b/a SPECIALTY ENZYMES &
BIOTECHNOLOGIES,

    Defendant.

## DECISION AND ORDER

This case is before the court on the defendant's motion to dismiss two counts of the plaintiff's original complaint. After the motion was filed, the plaintiff filed an amended complaint dropping one of the claims at issue, and the only remaining dispute that is ripe for resolution is whether the plaintiff's negligence claim is barred by Wisconsin's economic loss doctrine. For the reasons below, I conclude it is and therefore grant the defendant's motion to dismiss the plaintiff's claim of negligence.

## BACKGROUND

Plaintiff Schwabe North America, Inc. (Schwabe), a Wisconsin corporation with its principal place of business in Green Bay, Wisconsin, manufactures, sells and distributes a variety of dietary supplements, plant-based medicines and other healthcare products. Defendant Cal-India Foods International, Inc., d/b/a Specialty Enzymes & Biotechnologies Co. (Specialty), a California corporation with its principal place of business in Chino, California, manufactures and sells

nutraceutical and industrial enzymes. On February 13, 2013 and again on April 10, 2013, Schwabe contracted with Specialty to provide certain enzymes to be incorporated in the manufacture and sale of Schwabe's dietary supplement products to distributors and consumers. Schwabe's complaint alleges Specialty knew the enzymes would be used in this way, and that Specialty warranted the enzymes met certain specifications. Upon receiving the enzymes, Schwabe did incorporate them into the products and distributed them to clients.

According to the amended complaint, when Specialty shipped the enzymes, they had been contaminated with chloramphenicol, which Schwabe alleges is "an antibiotic that poses a serious health danger to consumers." (ECF No. 39 ¶ 11.) Schwabe further alleges chloramphenicol contamination falls under the definition of "adulteration" as set forth under applicable federal law.

On October 18, 2013, Specialty issued a recall for certain of its enzymes, including those that had been incorporated into Schwabe's products. Schwabe alleges it was then forced to recall its contaminated products, causing losses, expenses and damages. When Specialty failed to reimburse Schwabe for its losses growing out of the recall, Schwabe filed suit in Brown County Circuit Court alleging negligence, breach of warranty and a violation of Wis. Stat. § 100.18, which prohibits false and deceptive representations in connection with the sale of goods and services. Specialty timely removed the action asserting diversity jurisdiction under 28 U.S.C. § 1332. Specialty then moved to dismiss the first and third claims for failure to state a claim upon which relief can be granted, and alternatively as to the third claim, Specialty moved for a more definite statement. Schwabe ultimately dropped the claim under § 100.18, and since the briefing was completed on Specialty's motion to dismiss, Schwabe filed an amended complaint, with consent of Specialty, which added a claim of product liability under section 895.047 of the Wisconsin Statutes. Accordingly, Scwhabe

is seeking damages for negligence, breach of warranty and product liability, but the sole issue before the court is Specialty's motion to dismiss the negligence claim.

## LEGAL STANDARD

Dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). To state a claim, a complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In deciding a motion to dismiss, the court construes the allegations in the complaint in a light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws all inferences in favor of the non-moving party. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011).

## ANALYSIS

Both sides agree Wisconsin substantive law governs this case. The issue before the court is whether Schwabe's negligence claim is barred by Wisconsin's economic loss doctrine, pursuant to which "a commercial purchaser of a product cannot recover from a manufacturer, under the tort theories of negligence or strict products liability, damages that are solely 'economic' in nature." *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 400, 573 N.W.2d 842 (1998); *see also Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 437 N.W.2d 213 (1989) (adopting economic loss doctrine in Wisconsin). The Wisconsin Supreme Court has identified three policies that underlie the economic loss doctrine:

3

> [a]pplication of the economic loss doctrine to tort actions between commercial parties is generally based on three policies, none of which is affected by the presence or absence of privity between the parties: (1) to maintain the fundamental distinction between tort law and contract law; (2) to protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage the party best situated to assess the risk [of] economic loss, the commercial purchaser, to assume, allocate, or insure against that risk.

*Id.* at 403.

In this case, the losses at issue are economic in nature. This category of loss, sometimes called "commercial loss," *Miller v. U.S. Steel Group*, 902 F.2d 573, 574 (7th Cir. 1990), generally includes "damages resulting from inadequate value because the product is inferior and does not work for the general purposes for which it was manufactured and sold." *Daanen*, 216 Wis. 2d at 845, 573 N.W.2d 842. More specifically, economic loss includes costs of the replacement of and repair to the defective product, and lost profits attributable to the defect. *Id.*; *see also Northridge Co. v. W.R. Grace & Co.*, 162 Wis. 2d 918, 926, 471 N.W.2d 179 (1991). Conceptually, costs and expenses associated with recalling a defective product, which are what is at issue in this case, fit neatly into the category of economic loss. Indeed, applying *Daansen*, the Seventh Circuit has held that recall expenses are economic loss. *See Rich Products Corp. v. Kemutec Inc.*, 241 F.3d 915 (7th Cir. 2001).

Schwabe argues that the economic loss doctrine does not bar its negligence claim because the defective product (the enzyme) caused damage to other property (the dietary supplement). As the *Daansen* court stated, "[t]he economic loss doctrine . . . does not bar a commercial purchaser's claims based on personal injury or damage to property *other than the product*, or economic loss claims that are alleged in combination with noneconomic losses." 216 Wis. 2d at 402, 573 N.W.2d 842 (emphasis added). Thus, Schwabe contends that its negligence claim falls within the "other

property" exception to the economic loss doctrine.

The "other property" exception, however, has been sharply limited by Wisconsin courts by the concept of the integrated system. *See Grams v. Milk Products, Inc.*, 2005 WI 112, ¶ 27, 283 Wis. 2d 511, 699 N.W.2d 167 (2005) ("Like many other states, we have incorporated the concept of an 'integrated system.' If the 'product' at issue is a defective component in a larger 'system,' the other components are not regarded as 'other property' in a legal sense, even if they are different property in a literal sense."). In *Bay Breeze Condominium Ass'n v. Norco Windows, Inc.*, for example, the Wisconsin Court of Appeals applied the "integrated system" concept to find that defective windows were simply "part of a single system or structure, having no function apart from the buildings for which they were manufactured." 2002 WI App 205, ¶ 27, 257 Wis. 2d 511, 651 N.W.2d 738. The same conclusion follows here. Like the windows in *Bay Breeze*, the contaminated enzymes in this case were merely a component of an integrated system—the supplements. Thus, the "other property" exception does not apply.

Schwabe attempts to avoid this conclusion by invoking the "disappointed expectations" test, which is yet another concept courts in Wisconsin and elsewhere have utilized in determining the scope of the economic loss doctrine. But the "disappointed expectations" test actually supports Specialty's argument that Schwabe's negligence claim is barred. Under this test, the exclusive remedy for a commercial product that causes property damage by failing to perform as expected is generally under contract since the parties can allocate the risk of such non-performance by contract. *Grams*, 2005 WI 112, ¶ 31. Thus, in *Grams* the court held that the economic loss doctrine applied where the defendants' allegedly defective milk replacement product caused damaged the plaintiffs' calves because it was within the expectations of the plaintiffs that the product would provide

5

necessary nutrition to their calves. *Id.* at ¶ 53. Surely, it was likewise within the parties' expectations in this case that if Specialty supplied Schwabe with adulterated enzymes, its own dietary supplements would have to be recalled.

Schwabe's primary argument against dismissal of its negligence claim is based on what it calls the public safety exception to the economic loss doctrine. In support of its argument, Schwabe relies on *Northridge v. W.R. Grace & Co.*, 162 Wis. 2d 918, 922, 471 N.W.2d 179 (1991). In *Northridge* the owners of two shopping malls sued the manufacturer of an asbestos insulation product in negligence and strict liability for the costs of inspecting, testing and removing the product, along with the diminished value of the malls caused by the contamination. The circuit court dismissed the property owners' tort claims on the ground that they were barred by the economic loss doctrine. The Wisconsin Supreme Court reversed. Schwabe claims that in so ruling, the court recognized a public safety exception to the economic loss doctrine that applies where the alleged negligence of the defendant creates a public health hazzard. (ECF No. 33 at 3–4.) Noting that the complaint alleges that the enzymes supplied by Specialty are inherently dangerous to consumers, Schwabe argues that its negligence claim falls within the public safety exception to the economic loss doctrine and that dismissal would be improper.

As the Wisconsin Supreme Court has noted, however, "*Northridge* does not create a broad public safety exception to the economic loss doctrine ...." *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 264, 593 N.W.2d 445 (1999). Indeed, a careful reading of *Northridge* reveals that it did not create a public safety exception at all. *Northridge* was based on the other property exception to the economic loss doctrine. This is clear from the Court's statement of the issue at the outset of its opinion in *Northridge*: "Our task, then, is to determine whether the plaintiffs

6

have alleged a tort claim for physical harm to property (property other than the allegedly defective product itself) or whether the losses complained of by the plaintiffs are only recoverable under a theory of contract. We must examine the complaint in light of the defendant's arguments on economic loss and the plaintiffs' assertion of physical harm to property." 162 Wis. 2d at 184. It is also clear from the Court's conclusion: "We conclude that the plaintiffs are entitled to offer evidence to support their claims. Whether the plaintiffs will ultimately prevail on their claim that the defendant's unreasonably dangerous product caused injury to property other than the product itself is a question of fact to be determined at trial, not on a motion to dismiss." *Id.* at 187. To be sure, the fact that the asbestos product allegedly caused a significant health hazzard to occupants of the mall was an important consideration in the Court's decision, but its significance was viewed in the context of deciding whether the complaint alleged damage to property other than the product itself. *Id.* at 184–86.

Here, for the reasons cited above, I have concluded that the addition of Specialty's enzymes to Schwabe's dietary supplements created an integrated system for purposes of applying the economic loss doctrine. It thus follows that the other property exception does not apply and Schwabe's negligence claim is barred by the economic loss doctrine. Specialty's motion for partial dismissal is therefore granted.

**SO ORDERED** this  23rd  day of December, 2014.

                                                       s/ William C. Griesbach
                                                     William C. Griesbach, Chief Judge
                                                     United States District Court